***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Glenn and the briefs and oral arguments before the Full Commission. The parties have not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, with the exception of modifications in light of the North Carolina Supreme Court's decision in Austin v. Continental GeneralTire, 354 N.C. 344, 553 S.E.2d 680 (2001).
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a pre-trial agreement and at the hearing before the deputy commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff-employee and defendant-employer between 1970 and 1984.
3. According to Industrial Commission records, Continental Casualty Company was the workers' compensation carrier for Martin Marietta, from July 1, 1969 to January 1, 1977. Home Indemnity was the workers' compensation carrier for Martin Marietta from January 1, 1977 to March 10, 1983. Clariant Corporation purchased the plant on March 11, 1983. Liberty Mutual was the workers' compensation carrier for Clariant Corporation at its purchase of the plant until plaintiff left his employment with Clariant in 1984.
4. The parties stipulated into evidence as Stipulated Exhibit 1, without need for further authentication or verification, an asbestos identification survey from defendant-employer and plaintiff's medical and personnel records from defendant-employer.
 ***********
The Full Commission adopts the Findings of Fact found by the Deputy Commissioner with some modifications and finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner in this matter, plaintiff was a 76-year-old male who completed the ninth grade. He later received a GED while in the United States Navy. Plaintiff became employed with defendant-employer in 1970, where he worked as a pipe fitter and insulator until his retirement in 1984. Defendant-employer is a large company that makes chemicals and dyes and has miles of piping in the facility in which plaintiff was employed.
2. Throughout plaintiff's employment with defendant-employer, plaintiff insulated pipes and vessels, often with asbestos insulation. Many of the pipes in defendant-employer's facility were insulated, as were many of the tanks, boilers and vessels. Plaintiff also fitted pipes, dug ditches, laid concrete and tore down old pipes. There were numerous buildings at defendant-employer's facility and over his career, plaintiff worked in every one of them.
3. During the early years of plaintiff's employment with defendant-employer, most of the insulation that plaintiff installed or removed on pipes, tanks, boilers and other areas contained asbestos. Even after asbestos was no longer manufactured, plaintiff continued to install asbestos insulation because defendant-employer had large quantities of it stored in buildings 4 and 23.
4. The exterior of most of the buildings at defendant-employer's facility was covered with transite, an asbestos siding. Plaintiff worked with the transite siding by cutting it with saws or drilling holes in it for pipes to be placed through the buildings. This work created a lot of asbestos dust.
5. Plaintiff worked with asbestos gasket material three or four days a week. Plaintiff usually cut his own gaskets, which caused the release of asbestos dust. Even more asbestos dust was created when old gaskets were removed as they hardened and stuck to the pipes. Plaintiff used a hammer and chisel to remove the old asbestos gasket and then sanded the area smooth before a new gasket was put on. Plaintiff used asbestos gaskets until he left employment with defendant-employer in 1984.
6. Plaintiff also worked with rotary drums which contained 30,000 to 40,000 gallons of dye. Plaintiff insulated these drums with asbestos block. On numerous occasions plaintiff removed the asbestos insulation in order to patch the rotary drum and repair it. He then reinsulated the rotary drum. When a rotary drum wore out, plaintiff took off the transite roof. A crane then pulled the rotary drum out. Plaintiff chiseled and beat off the asbestos insulation from the old rotary drum before discarding it.
7. In approximately 1976 and again in 1978, plaintiff helped tear down buildings. It took six months to a year to take down a building. In taking down the building, plaintiff first removed all of the piping. The pipes were sawed off and the insulation was stripped. All the equipment was removed and the transite siding was beaten off with hammers. There was not a single day during these demolition projects that plaintiff was not exposed to asbestos because it was being knocked down everywhere and it was so dusty that workers could hardly see. At times plaintiff looked like a snowman from being covered with asbestos dust.
8. Defendant-employer's asbestos identification surveys indicate that as late as 1993 there was still asbestos containing material in all of the buildings and locations where plaintiff worked on a daily basis.
9. Plaintiff frequently worked in the salvage yard. When the pipes, vessels, or other materials were removed from defendant-employer's facility, they were taken to the salvage yard. All materials taken to the salvage yard had to have all of the insulation removed prior to being sold. Plaintiff worked in the salvage yard stripping tanks and pipes, exposing him to large amounts of asbestos.
10. Plaintiff was exposed to asbestos until the day that he retired in 1984. Between 1970 and 1984 plaintiff had hands on contact with asbestos insulation during approximately three weeks out of five of his employment at the facility.
11. In October 1997, plaintiff was diagnosed with lung cancer. As a result, he had much of his right lung removed.
12. Dr. Steven Dikman performed a pathological examination of a portion of plaintiff's lung tissue. Dr. Dikman determined that plaintiff had both lung cancer and asbestosis. Dr. Dikman further determined that plaintiff's occupational exposure to asbestos, along with smoking, was a significant contributing factor in the development of his lung cancer.
13. Dr. Dikman's diagnoses were also confirmed by Mark Rigler, Ph.D., who performed an electron microscope analysis of plaintiff's lung tissue. This analysis revealed that plaintiff had 2,285,259 asbestos structures per gram of dry lung tissue. Based upon Dr. Rigler's cohort studies and published medical journal articles, this fiber burden is greatly in excess of what one would expect to find in an individual without occupational exposure to asbestos and is consistent with plaintiff having asbestosis.
14. Dr. John Craighead reviewed plaintiff's lung tissue on behalf of defendants. Although he discovered an asbestos body in plaintiff's lung tissue, Dr. Craighead stated that plaintiff did not have asbestosis or asbestos-related lung cancer.
15. The opinions of Dr. Dikman and Dr. Rigler are given greater weight than the opinion of Dr. Craighead.
16. Throughout plaintiff's thirteen year employment with defendant-employer, plaintiff was injuriously exposed to asbestos and asbestos dust. Up to the time plaintiff left his employment with defendant-employer, plaintiff was injuriously exposed to the hazards of asbestos in excess of 30 working days, or parts thereof, within seven consecutive months.
17. Plaintiff has asbestosis, a scheduled occupational disease which is a characteristic fibrotic condition of the lung caused by the inhalation of asbestos fibers, as a result of his occupational exposure to asbestos while employed by defendant-employer.
18. There is no evidence in the record to establish that plaintiff was exposed to the hazards of asbestos subsequent to his employment with defendant-employer.
19. Plaintiff was last injuriously exposed to the hazards of asbestos while employed by defendant-employer and during the period of coverage by Liberty Mutual.
20. Plaintiff has asbestos-related lung cancer which was due to causes and conditions characteristic of and peculiar to plaintiff's particular employment with defendant-employer, and which is not an ordinary disease of life to which the general public is equally exposed outside of his employment.
21. Plaintiff's exposure to asbestos in his employment placed him at an increased risk for contracting asbestosis and lung cancer over the general public not so exposed.
22. At the time of the hearing before the Deputy Commissioner, plaintiff was 76 years old. During his employment history, plaintiff performed only heavy physical labor. Plaintiff has no skills or training in areas other than heavy physical labor. Due to plaintiff's asbestosis and asbestos-related lung cancer, plaintiff is extremely limited in the activities he can perform.
23. Plaintiff is incapable, due to his asbestos-related lung cancer, of earning the same wages he earned before his injury in the same or any other occupation.
24. Plaintiff's incapacity to earn wages is caused by his asbestos-related lung cancer. Considering plaintiff's age, education, work experience and health, such incapacity is continuing in nature and plaintiff is totally and permanently disabled and has been so since October 1997.
25. In the 52 weeks prior to his retirement in 1984, plaintiff earned a salary of $17,787.64, which yields an average weekly wage of $342.07, and a weekly compensation rate of $226.16. Plaintiff has not returned to work in any capacity for defendant-employer or any other employer.
26. The first four preferred methodologies under N.C. Gen. Stat. § 97-2(5) would not be fair to the parties. Disability and thus earnings under N.C. Gen. Stat. § 97-61 et seq., like those under N.C. Gen. Stat. § 97-31, are conclusively presumed last, whether actually earned or not. The best evidence of those earnings conclusively presumed for retirees suffering from asbestos and silicosis is the earnings from the last year of employment. The fifth method under N.C. Gen. Stat. § 97-2(5) is for those exceptional cases including calculating average weekly wages for retirees first diagnosed post employment as having asbestosis, silicosis or asbestos-related lung cancer. This method is also fair to the employer because premiums were based on that year's payroll.
27. As a result of plaintiff's asbestosis, plaintiff has suffered permanent injury to both his lungs, which are important internal organs.
28. Plaintiff timely filed his workers' compensation claim.
29. Defendants' appeal was reasonable and not based in stubborn, unfounded litigiousness.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff was, up until the time he left his employment with defendant-employer in 1984, injuriously exposed to the hazards of asbestos in excess of 30 working days, or parts thereof, within seven consecutive months. The last injurious exposure of plaintiff occurred during the coverage period of Liberty Mutual. N.C. Gen. Stat. § 97-57.
2. Plaintiff's claim for compensation due to asbestosis was timely filed. N.C. Gen. Stat. § 97-58.
3. Plaintiff has asbestosis and asbestos-related lung cancer, which are occupational diseases due to causes and characteristics of and peculiar to his employment with defendant-employer which are not ordinary diseases of life to which the general public is equally exposed. N.C. Gen. Stat. § 97-53(24).
4. Plaintiff was not taken out of employment because of his exposure to asbestos and is not entitled to 104 weeks of compensation as a result of his diagnosis of asbestosis. N.C. Gen. Stat. § 97-61.5; Austin v. Continental General Tire,354 N.C. 344, 553 S.E.2d 680 (2001).
5. Considering all of the facts at issue in this case, an appropriate basis for determining a fair average weekly wage for plaintiff is to calculate benefits based upon the wages last earned in his employment. N.C. Gen. Stat. § 97-2(5).
6. Plaintiff is entitled to compensation at the rate of $228.16 per week for the remainder of his life because of his contraction of the occupational disease of asbestos-related lung cancer. N.C. Gen. Stat. § 97-29.
7. As the result of his occupational disease of asbestosis, plaintiff is entitled to compensation for permanent injury to both lungs, which are important internal organs. The reasonable amount of compensation for this permanent injury is $20,000.00 per lung. N.C. Gen. Stat. § 97-31(24).
8. Plaintiff is entitled to have defendants pay for all medical expenses incurred or to be incurred as a result of the plaintiff's asbestosis and asbestos related lung cancer as may be required to provide relief, effect a cure or lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-25; 97-59.
9. Carrier Liberty Mutual was on the risk at the time ofplaintiff's last injurious exposure and is, therefore, liable forpayment of compensation due plaintiff pursuant to the Act. N.C.Gen. Stat. § 97-57.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant-employer and Liberty Mutual shall pay to plaintiff for his compensable occupational disease, asbestos-related lung cancer, permanent total disability compensation in the amount of $228.16 per week from the date of disability, beginning October 1997 and continuing for the remainder of his life. Such amount as has accrued shall be paid in a lump sum, subject to the attorney's fee awarded below.
2. Defendant-employer and Liberty Mutual shall pay to plaintiff $40,000.00 for the permanent injury to both his lungs which are important internal organs as the result of the asbestosis. This amount shall be paid in a lump sum, subject to the attorney's fee awarded below.
3. A reasonable attorney's fee of twenty-five percent of the compensation due under Paragraphs 1 and 2 of this Award is approved for plaintiff's counsel and shall be paid by deducting the lump sum and paying directly to plaintiff's counsel. Thereafter, defendant-employer and Liberty Mutual shall pay to plaintiff's attorney an amount equal to every fourth check paid to plaintiff.
4. Defendant-employer and Liberty Mutual shall pay all medical expenses incurred or to be incurred by plaintiff as a result of his compensable occupational diseases.
 ORDER
1. Defendants Continental Casualty Company and Home Indemnity Insurance Company are hereby DISMISSED as party defendants.
2. Defendant Liberty Mutual's motion to require plaintiff to provide information from third-party lawsuits is hereby GRANTED, and plaintiff is hereby ORDERED to provide such information to defendants.
3. Defendant-employer and Liberty Mutual shall pay the costs of this proceeding.
This the _____ day of March 2002.
 S/_____________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/_____________________________ BUCK LATTIMORE CHAIRMAN
S/_____________________________ THOMAS J. BOLCH COMMISSIONER
LKM/mhb